**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MOONGATE WATER CO., INC.,
a New Mexico Public Utility,

      Plaintiff,

      vs.                                                                 No. CIV 00-0063 JC/LCS

BUTTERFIELD PARK MUTUAL DOMESTIC
WATER ASSOCIATION, a/k/a BUTTERFIELD PARK
MUTUAL DOMESTIC WATER CONSUMERS AND
MUTUAL SEWAGE WORKS ASSOCIATION,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiff's Motion for Summary Judgment, filed April 3, 2000 *(Doc. 16)*, and Defendant's Motion for Partial Summary Judgment, filed April 5, 2000 *(Doc. 21)*. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court finds that Plaintiff's motion is not well taken and will be denied. The Court also finds that Defendant's motion is well taken and will be granted.

This matter also came on for consideration of Plaintiff Moongate's Motion in Limine to Exclude and Strike Supplemental Affidavit of Mary Berry, filed April 20, 2000 *(Doc. 26)*. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motion is moot.

**Background**

The material facts of this case are not disputed. Defendant Butterfield Park Mutual Domestic Water Association ("Butterfield") is an organization which provides water and sewer service to residents within its territory. Pursuant to regulations promulgated by Butterfield, a resident wishing

to obtain water service from Butterfield must provide an Application for Membership, a Membership Agreement, Proof of Property Ownership and pay the requisite fees. In 1988, Butterfield began providing water service to 9165 Berry Patch Lane, a property within its territory owned by the Donnahoos. In early 1998, Ms. Frances Hutson moved onto the property. Sometime during the next year, Ms. Hutson purchased the property from the Donnahoos, whereupon Butterfield requested that Ms. Hutson comply with its rules and regulations relating to the provision of water service. In subsequent exchanges, Butterfield warned that service would be terminated if Ms. Hutson did not comply. Ms. Hutson refused to comply, citing that Butterfield conditioned service upon her granting an easement for their facilities across her property. On September 22, 1999, Butterfield terminated service to Ms. Hutson's property.

Upon learning that Ms. Hutson's water service had been terminated, Plaintiff Moongate Water Company ("Moongate") sought permission from the Public Regulation Commission to provide her with water service. On September 28, 1999, after receiving a letter which indicated that such formal approval was not needed, Moongate connected Ms. Hutson to its water system  Subsequently, Moongate sent a letter to other Butterfield customers, soliciting their business.

A dispute arose as to whether Moongate is permitted to sell water to customers within the Butterfield service area under 7 U.S.C. § 1926. This statute was enacted to allow the Secretary of Agriculture to make loans through the Farmers Home Administration, now known as the Rural Utilities Service ("FmHA"). Under § 1926(b), "service provided or made available through any such association shall not be curtailed or limited . . . during the term of such loan." Moongate brings suit seeking a declaratory judgment that Butterfield is not entitled to the protections afforded by 7 U.S.C. § 1926(b) in regards to water service to Ms. Hutson and other customers whom Moongate seeks to service. Conversely, Butterfield argues that, as a recipient of an FmHA loan, it is entitled

to protection under the act from present and future competition. Accordingly, Butterfield seeks a declaratory judgment that Moongate has unlawfully violated its rights under § 1926(b). Butterfield also seeks money damages as a result of Moongate's alleged actions. Now before the Court are the parties' cross-motions for summary judgment, both of which turn on the application of 7 U.S.C. § 1926(b).

## Analysis

### I. Plaintiff's Motion in Limine

After both motions for summary judgment were filed, Plaintiff Moongate submitted its Motion in Limine to Exclude and Strike Supplemental Affidavit of Mary Berry, file April 20, 2000 *(Doc. 26)*. Specifically, Moongate asked that this court enter an order excluding and striking the last sentence of ¶ 4; and ¶¶ 5, 6, and 7 of Ms. Berry's supplemental affidavit. *See* Pl.'s Mot. in Limine at 1 *(Doc. 26)*.

In the following analysis addressing the summary judgment motions submitted by the parties, the Court did not rely upon nor utilize any information set forth in Mary Berry's supplemental affidavit. Therefore, Plaintiff's motion to exclude or strike the supplemental affidavit is moot.

### II. Motions for Summary Judgment

#### A. Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-movant. *See Magnum Foods v. Continental Cas. Co.*, 36 F.3d 1491, 1497 (10th Cir. 1994). The moving party bears the initial burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Only then does the burden shift to the

non-movant to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991). All doubts must be resolved in favor of the existence of triable issues. *See World of Sleep v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

**B.     Discussion**

As part of the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-2009n, Congress authorized the Secretary of Agriculture to make or insure loans to non-profit water service associations for "the conservation, development, use, and control of water" in order to encourage soil conservation practices, water service and management, waste facilities and other community facilities for farmers, ranchers and other rural residents. *See Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir. 1988). By including water service to "other rural residents," Congress intended 1) to reduce per user cost resulting from the larger base of users, 2) to provide greater security for the federal loans made under the program, and 3) to provide a safe and adequate supply of water. *See* S. Rep. No. 566 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309. In order to protect the nonprofit water service associations and the federal loans made to them, Congress enacted 7 U.S.C. § 1926(b) to protect against "competitive facilities which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." *Id.*

Section 1926(b) provides that:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

In this case, Moongate and Butterfield dispute whether Butterfield is entitled to protection under § 1926(b) against service provided by Moongate to Ms. Hutson and other potential customers. The Tenth Circuit has held that in order to receive the protection against competition provided by § 1926(b), a qualified water association must "1) have a continuing indebtedness to the FmHA, and 2) have provided or made available service to the disputed area." *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1197 (10th Cir. 1999) (citations omitted).

### *1. Association*

Before a party can prevail on a § 1926(b) claim, the party must establish that it is entitled to § 1926(b) protection by establishing that it is an "association" within the meaning of the Act. *See Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 234 (6th Cir.1996). Title 7 U.S.C. § 1926 authorizes the Secretary of Agriculture "to make or ensure loans to associations including corporations not operated for profit . . . and public and quasi-public agencies." 7 U.S.C. § 1926(b). Butterfield argues that it is an incorporated, non-profit association created for the purposes of providing water and waste disposal facilities to the residents within its service area. *See* Articles of Incorporation, attached as Ex. 1 to Def.'s Mot. for Partial Summ. J., filed Apr. 5, 2000 *(Doc. 21)*. Moongate, on the other hand, contends that Butterfield is not a true non-profit corporation because it is required to distribute its profits to its members. Moongate also disputes that Butterfield is a public or quasi-public entity.

The Court finds that Butterfield is an association within the meaning of the statute. The Articles of Incorporation clearly state that Butterfield is a non-profit organization. *See id.* While Article X of the Articles of Incorporation authorize the distribution of "surplus funds" to members of the organization, such acts are not inconsistent with a non-profit organization. On the contrary,

members are refunded a percentage of their contribution to the organization whenever there is a surplus, eliminating any profit. *See id.* at Art. X. Nonetheless, even if the refunded contributions render Butterfield a "for-profit corporation," Butterfield's inclusion as an association under the statute can be found in the clear definition of a "quasi-public corporation" as "[a] for-profit corporation providing an essential public service. . . . [a]n example is an electric company or other utility." BLACK'S LAW DICTIONARY, 344 (7th ed. 1999).

Finally, Congress enacted § 1926(b) to encourage rural water development and to provide greater security for FmHA loans. *See Sequoyah*, 191 F.3d at 1196. Thus, any "[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory." *Id.* Therefore, the Court's holding is supported by the public policy underlying the federal statute.

### 2. FmHA Loans

The analysis continues with the indebtedness prong of § 1926(b). In order to seek protection under § 1926, Butterfield must have had a continuing indebtedness to the FmHA during the alleged competition or encroachment into their service area. *See Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 173 F.3d 517, 523 (4th Cir. 1999). Butterfield obtained loans from the FmHA on March 1, 1972 and March 5, 1974, for the purpose of constructing water facilities.[1] Pursuant to the Omnibus

---

[1] Moongate disputes Butterfield's Undisputed Statement of Fact No. 7 which states that,

> On March 1, 1972, and on March 5, 1974, Butterfield obtained loans from the government ("FmHA") for the purposes of construction water facilities to meet the needs of the residents within its service area. Butterfield remains indebted on these loans today. Ex. 3, St. No. 8 and Exs. 6 and 7, true and correct copies of the loan documents for the 1972 and 1974 FmHA Loans.

*See* Br. in Supp. of Def.'s Mot. for Partial Summ. J. at 2 *(Doc. 21)*. Moongate argues that Butterfield failed to attach the full loan documents. Elsewhere, however, the fact that the loans were made is not disputed. *See* Plaintiff's Mot. for Summ. J. at 5, ¶ 24 *(Doc.16)*. Therefore, there is no genuine issue of material fact concerning whether Butterfield obtained FmHA loans. Instead, the issue in dispute is whether those loans remain in effect for the purpose of § 1926(b) protection.

Budget Reconciliation Act ("OBRA") of 1986, enacted "[a]s part of an overall effort to reduce the federal deficit," the FmHA assigned Butterfield's notes to Community Property Trust No. 1987A (with General Electric Credit Corporation acting as agent for Shawmut Bank NA) in September of 1987. *See* OBRA § 1001(a)-(e) (codified at 7 U.S.C. § 1929a note, subsections (a)-(e)).

Subsequently, Congress amended OBRA by requiring the FmHA to provide rights of first refusal to its debtors before it attempted to sell the obligations to third party purchasers. *See* OBRA § 1001(f), as amended by ACA § 803(f) (codified at 7 U.S.C. § 1929a note, subsection (f)). As part of the same series of amendments, Congress enacted the following provision:

> Applicability of Prohibition on Curtailment or Limitation of Service. – Section [1926(b)] . . . shall be applicable to all notes or other obligations sold or intended to be sold under this section.

OBRA § 1001(g), as amended by the Agricultural Credit Act ("ACA") of 1987 § 803(g) (codified at 7 U.S.C. § 1929a note, subsection (g)).

Accordingly, when an issuer opts to repurchase its own bond under OBRA §1001(f), courts have held that the debt is considered canceled and the issuer no longer qualifies as a debtor for § 1926(b) protection. *See Bell Arthur*, 173 F.3d at 522-23 (holding that §1926(b) protection does not extend to the retirement of indebtedness authorized by OBRA § 1001(f)); *see also Scioto County Reg'l Water Dist. No. 1 v. Scioto Water, Inc.*, 103 F.3d 38, 42 (6th Cir. 1996); *Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 967 F. Supp. 1483, 1523 (N.D. Iowa 1997). In contrast, the Tenth Circuit has noted that § 1001(g) "clearly extends the protection of § 1926(b) to situations in which the government sells notes or other obligations to third parties." *Sequoyah*, 191 F.3d at 1198. Here, the FmHA loans held by Butterfield were not repurchased, but sold to a third party; however, the sale was made before OBRA § 1001(g) was passed. Thus, the question now before the Court is whether the amendment reflected a change in the law such that assignments made prior to the

amendment are not protected by § 1926(b), or whether the amendment was merely a clarification of the existing law, in which case the assignments remain subject to the protections of § 1926(b).

One of the principal purposes of 7 U.S.C. § 1926(b) is to protect federal loans insured by the Rural Development Insurance Fund. *See Bell Arthur,* 173 F.3d at 523. Thus, protection under § 1926(b) is afforded "during the term of such loan." 7 U.S.C. §1926(b). OBRA, as amended by the ACA, did not intend to delete this condition. *See Bell Arthur*, 173 F.3d at 523. While the issuer's debt remains outstanding, the underlying policy behind § 1926(b) stands, regardless of the loan holder. OBRA § 1001(g) was enacted to ensure that a third-party purchaser enjoyed the same assurance of repayment that the federal government had as the holder of the notes. *See id.* It would defeat the underlying purpose of the statute if the court were to carve out a brief time period in which § 1926(b) did not apply. This position is supported by the legislative history accompanying the act which referred to the amendments as "technical and correcting changes in agriculture programs." *See* S. 1793, 101st Cong., 103 Stat. 1876 (1989) (enacted). Thus, congressional intent appears to reflect a desire to clarify the applicability of § 1926(b), rather than a desire to alter the applicability of the statute. Therefore, the court finds that OBRA, as amended by the ACA, merely clarified the continuing application of § 1926(b) to loans transferred by the FmHA. The Court further finds that Butterfield did not lose the protection afforded to FmHA debtors when the FmHA sold the loans to Community Property Trust 1987A.

### 3.   *Availability of Service*

Finally, the Court must determine whether Butterfield has provided or "made service available" to Ms. Huston's property. *See Sequoyah*, 191 F.3d 1192, 1201. Recently, the Tenth Circuit has held that the analysis should center on "whether the association has proximate and adequate 'pipes-in-the-ground' with which it has served or can serve the disputed customers within

a reasonable time." *Id.* at 1203. A water association may meet the "pipes-in-the-ground test" by demonstrating "that it has adequate facilities within or adjacent to the area within a reasonable time after a request for service is made." *Bell Arthur*, 173 F.3d at 526. In determining whether a water association is entitled to protection, every federal court which has interpreted § 1926(b) has liberally interpreted the statute to protect FmHA -indebted rural water associations from encroachments. *See North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 913 (5th Cir. 1996).

Butterfield had been providing service to the property located at 9165 Berry Patch Lane for many years before Ms. Huston purchased the property. In fact, Butterfield had provided water service to the entire area for many years, including the time period in which Ms. Huston first moved onto the property and then eventually purchased the property. To this day, Butterfield provides water service to the neighborhood, albeit under threat of encroachment by Moongate. Therefore, the court finds that Plaintiff has met the "pipes-in-the-ground" test promulgated by the Tenth Circuit.

However, § 1926(b) protection is not intended to authorize an association to charge unreasonably high rates or fees. *See Rural Water Dist. No. 1 v. City of Wilson*, 29 F. Supp.2d 1238, 1247 (D. Kan. 1998). Accordingly, a rural water association which conditions service on the user's agreement to pay unreasonable fees is not "making service available." *See id.* (finding that service was not made available where rural water provider sought reimbursement in excess of $32,000 for the cost of building additional lines and infrastructure); *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994) (finding that annexation as a condition of receiving water service was unreasonable).

Moongate argues that because Butterfield has conditioned service on Ms. Huston granting an easement across her property for the waterline, Butterfield has failed to make service available. I disagree. In this case, the requisite fees are not unreasonable. Butterfield merely requests an 8-inch line easement in order to provide Ms. Huston and other customers with water service, and a right of

entry to the property, presumably in order to maintain and service the line.  Butterfield merely asks for an access line to provide service, which is quite different than ordering that a customer's property be annexed.  Therefore, the Court finds that the requested fees and easement are not unreasonable under the facts of this case, and Butterfield has "made service available" to 9165 Berry Patch Lane under § 1926(b).

## Conclusion

Butterfield's ability to repay its federal loan and to provide a low per user cost to its customers depends in part on the economic well-being and territorial integrity of its service area. *See Bell Arthur* at 525.  Butterfield has met the requirements for protection under § 1926(b) and is therefore entitled to protection from encroachment by Moongate.

Wherefore,

IT IS ORDERED that Plaintiff Moongate's Motion in Limine to Exclude and Strike Supplemental Affidavit of Mary Berry, file April 20, 2000 *(Doc. 26),* is declared **moot**.

 IT IS ALSO ORDERED that Defendant's Motion for Partial Summary Judgment, filed April 5, 2000 *(Doc. 21)*, is **granted**.

IT IS ALSO ORDERED that Plaintiff's Motion for Summary Judgment, filed April 3, 2000 *(Doc. 16)*, is **denied**.

IT IS FURTHER ORDERED that the issues of damages, attorney fees and costs will be determined later.

IT IS DECLARED that Moongate's sale of water within the Butterfield service area is in violation of § 1926(b).

IT IS ALSO DECLARED that Moongate Water Co., Inc., must terminate water sales to 9165 Berry Patch Lane.

IT IS FINALLY DECLARED that Moongate is enjoined and restrained from further encroachment upon Butterfield's service area.

DATED this 25th day of October, 2000.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Leonard J. Piazza
    Las Cruces, New Mexico

    Kyle W. Gesswein
    Las Cruces, New Mexico

Counsel for Defendant:

    Matthew P. Holt
    Holt & Babington, P.C.
    Las Cruces, New Mexico

    Steven M. Harris
    Michael D. Davis
    Doyle & Harris
    Tulsa, Oklahoma